IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALVIN O. TANKESLY, JR., | ) |
| Petitioner, | ) CASE NO. 3:06-0543 |
| | ) JUDGE HAYNES |
| v. | ) |
| TOMMY MILLS, Warden, | ) |
| Respondent. | ) |

MEMORANDUM

Petitioner, Calvin O. Tankesly, Jr., filed this pro se action under 28 U.S.C. § 2254, seeking the writ of habeas corpus to set aside his state convictions for rape of a child and attempted rape of a child for which he received two consecutive life sentences without parole. After review of the petition, the Court appointed the Federal Public Defender to represent Petitioner. In his amended petition, Petitioner asserts the following claims:

> 1: Violations of the Sixth and Fourteenth Amendments to the United States Constitution given his counsel's ineffective assistance;
>
> 2: Violations of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution by the State's use of improperly seized evidence;
>
> 3: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by the trial judge's admission of evidence seized from Petitioner's home and car;
>
> 4: Violations of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution by the trial court's admission of identification testimony;
>
> 5: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by the State's knowing use of false testimony;
>
> 6: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by the trial judge precluding Petitioner from presenting his defense;

7: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by the State withholding of material exculpatory evidence;

8: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by the prosecution's closing argument vouching for the victim's credibility;

9: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by the trial court's jury instructions;

10: Violations of the Sixth and Fourteenth Amendments to the United States Constitution by a juror's misconduct;

11: Violations of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by the judge's sentence; and

12: The cumulative effect of these constitutional errors renders Petitioner's convictions and/or sentences unconstitutional.

(Docket Entry No. 37 at 7-10).

Before the Court is Petitioner's request for an evidentiary hearing. (Docket Entry No. 60). The Court earlier granted Petitioner's motion for certain discovery. To assess Petitioner's request for a hearing requires a brief review of the state record.

## A. Review of the State Record

A jury convicted Petitioner of rape of a child and attempted rape of a child. On appeal, the Tennessee Court of Criminal Appeals affirmed the convictions and sentence and the Tennessee Supreme Court denied Petitioner's application for permission to appeal May 21, 2001. State v. Calvin Otis Tankesly, No. M1998-00683-CCA-R3-CD, 2000 WL 1521475 (Tenn. Ct. Crim. App. Oct. 4, 2000).

Petitioner then filed a petition for state post-conviction relief and later a petition for writ of error coram nobis. The petition for writ of error coram nobis was denied on May 17, 2004. (Docket Entry No. 30-21, Addendum 14, pp. 48-52). The trial court denied Petitioner's post-conviction petition and on appeal, the Tennessee Court of Criminal Appeals affirmed the order

denying the petition coram nobis. Calvin O. Tankesly v. State, No. M2004-01440-CCA-R3-CO, 2005 WL 2008203 (Tenn. Ct. Crim. App. Aug. 19, 2005) (app. denied Feb. 6, 2006) and later upheld the denial of the post-conviction petition. Calvin Otis Tankesly v. State, No. M2005-02008-CCA-R3-PC, 2007 WL 1890208 (Tenn. Ct. Crim. App. June 28, 2007).

1. **State Court Findings**[1]

On direct appeal, the Tennessee Court of Criminal Appeals made the following findings of fact underlying Petitioner's convictions.

> On May 6, 1995, Tanya Briggs gave her six-year-old niece, B.B., some change and asked her to go purchase a soft drink from a machine located inside the laundry room of her apartment complex. As B.B. entered the laundry room, she encountered [Petitioner] who asked her "Do you want any panties?" [Petitioner] then grabbed B.B., put his hand over her mouth, and placed her on the floor. He pulled B.B.'s shorts and panties down and proceeded to digitally penetrate B.B.'s vagina. [Petitioner] next attempted to make B.B. perform oral sex upon him. He placed his penis on B.B.'s lips, but she never opened her mouth. [Petitioner] stood B.B. up and she urinated on herself. When he saw through the laundry room windows that two people were about to enter the building, he placed B.B. back on the floor, told her to pull her pants up, and immediately left the laundry room.
>
> Kimberly Gilkeson and her husband, Jimmy Gilkeson, lived in the same apartment complex and had just parked directly in front of the laundry room. Kimberly parked her car beside [Petitioner's] car, which was backed into the parking spot. Both Kimberly and Jimmy immediately noticed a young blond-headed male child, buckled into a car seat, in [Petitioner's] car. As Kimberly was attempting to exit her car, [Petitioner] walked out of the building. Due to the position of Kimberly's car in relation to [Petitioner's] car, Kimberly had to wait for [Petitioner] to get into his car before she could exit her vehicle. The [Petitioner] said "hello" or "something like that" to Kimberly, got in his car, and left. Kimberly testified that she made eye contact with [Petitioner] and observed him for approximately 15 seconds.
>
> Kimberly, followed shortly thereafter by her husband, proceeded into the laundry room. When she entered the facility, she found B.B. "hysterically crying and upset." B.B. repeatedly told Kimberly and her husband that "that man tried to kill me." B.B.'s hair was "real disheveled on her head, kind of standing up in parts."

---

[1] State appellate court opinion findings can constitute factual findings in a habeas action. Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness. 28 U.S.C. § 2254(e).

3

There was also change scattered across the floor of the laundry room. Kimberly and her husband took B.B. back to her aunt's apartment and then returned to the laundry mat. Upon returning, Kimberly noticed a puddle of urine on the floor and wiped it up with a pair of panties she found on the floor of the laundry room.

State v. Tanksley, 2000 WL 1521475, *1-2.

The State appellate court's other findings noted that "there exists no evidence that the victim was incompetent to testify" and affirmed the findings of the post-conviction court:

> At the trial in this matter, both this Court and the State questioned the victim as to whether she understood . . . how important it was to testify truthfully under oath. She said she understood that if she did not tell the truth that she would get in trouble. . . . The victim, who was one month short of being nine years old at the time of the trial, was obviously competent to testify accurately and honestly.

Tankesly, 2007 WL 1890208, at *12.

Petitioner's request for an evidentiary hearing is predicated upon his need to present expert proof that the victim was not penetrated. Petitioner attributes the lack of such proof in his State post-conviction proceedings to Tennessee law that did not grant him access to experts.

In the Antiterrorism and Effective Death Penalty Act, ("AEDPA"), Congress redefined the standards for conducting an evidentiary hearing in a habeas action:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, **the court shall not hold an evidentiary hearing on the claim unless the applicant shows that** - (A) the claims relies on - (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) **a factual predicate that could not have been previously discovered through the exercise of due diligence;** and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

In Williams v. Taylor, 529 U.S. 420 (2000), the Supreme Court explained that if the petitioner demonstrated diligence, then the inquiry ends, but if an issue of diligence arises, then

4

the focus is on whether the petitioner or his counsel knew of the matters at issue and failed to pursue them:

> The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts . . . Diligence for purposes of the opening clause [of Section 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have it, upon whether those efforts could have been successful.

\* \* \*

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must to diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.

\* \* \*

> Given knowledge of the report's existence and potential importance, a diligent attorney would have done more. Counsel's failure to investigate these references in anything but a cursory manner triggers the opening clause of § 2254(e)(2).
>
> As we hold there was a failure to develop the factual basis of this Brady claim in state court, we must determine if the requirements in the balance of § 2254(e)(2) are satisfied so that petitioner's failure is excused . . . upon a showing, by clear and convincing evidence, that no reasonable factfinder would have found petitioner guilty of capital murder but for the alleged constitutional error.

Id. at 435, 437, 439-440.

Independent of § 2254(e)(2), the Court also has the inherent authority to set an evidentiary hearing in a habeas action. Abdur'Rahman v. Bell, 226 F.3d 696, 705-06 (6th Cir. 2000). "[A] district court does have the inherent authority to order an evidentiary hearing even if the factors requiring an evidentiary hearing are absent." Id. at 705. Such hearings are set "to settle disputed issues of material fact." Id. at 706. Yet, "if [the court] concludes that the habeas

applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the court] may, and ordinarily should accept the facts as found in the hearing, but [the court] need not. In every case [the court] has the power, constrained only by [its] sound discretion, to receive evidence bearing on the applicant's constitutional claim." Id. (quoting Townsend v. Sain, 372 U.S. 293, 318 (1963)). This authority extends to determine factual issues, or if an inadequate record exist, on a procedural default controversy. Alcorn v. Smith, 781 F.2d 58, 60 (6th Cir. 1986).

Even prior to AEDPA, a habeas petitioner had to show cause for his failure to develop the state record or that "a fundamental miscarriage of justice would result from failure to hold an evidentiary hearing." Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992). In a word, the distinction between § 2254(e)(2) and the Court's inherent authority to order a hearing is "when a petitioner is entitled to a hearing [under § 2254(e)(2)] . . . versus whether a district court has the inherent authority to order a hearing [that] is still intact following Williams." Abdur'Rahman, 226 F.3d at 706. Evidentiary hearings have been held to be appropriately denied where the habeas petitioner "has not shown that his . . . claims would result in no reasonable fact-finder finding him guilty of the underlying offenses . . . We therefore conclude that the district court did not abuse its discretion by declining to conduct an evidentiary hearing." Abdus-Samad v. Bell, 420 F.3d 614, 626-27 (6th Cir. 2005).

Moreover, the Supreme Court and the Sixth Circuit have observed that: "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings." Keeney, 504 U.S. at 9. Accord Byrd v. Collins, 209 F.3d 486, 516-17 (6th Cir. 2000) (quoting Keeney, 504 U.S. at 9). More recently,

the Supreme Court stated "[W]e have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004).

As to Petitioner's contention that expert services were unavailable in his state post-conviction proceeding precluded his presenting proof on this claim, in Owens v. State, 908 S.W.2d 923 (Tenn. 1995) the Tennessee Supreme Court expressly authorized appointment and compensation for experts in state post-conviction proceedings involving a capital sentence.

> Of course, Tenn. Code Ann. § 40-14-207(b) vests with the trial court discretion to determine if investigative or expert services are necessary to ensure that the movant's constitutional rights are protected. Accordingly, the guiding principles discussed above must be applied on a case-by-case basis, in consideration of the existing facts and circumstances.
>
> If the motion for investigative or expert services is granted, "the court must grant the prior authorization for these expert services in a reasonable amount to be determined by the court." Tenn. Sup. Ct. Rule 13, § 2(b)(10); see also Tenn. Code Ann. § 40-14-207(b). In other words, the trial court must specify in its order granting the motion, the particular expert appointed, the hourly rate, and the total monetary amount approved. Tenn. Sup. Ct. Rule 13 § 2(b); see also Tenn. Code Ann. § 40-14-207(b). Requiring prior trial court approval of both the expert and the costs focuses the ex parte hearing and prevents abuse.
>
> For the foregoing reasons, we conclude that Tenn.Code Ann. § 40-14-207(b), applies to capital post-conviction cases. Therefore, under appropriate circumstances, an indigent petitioner in a post-conviction capital case is entitled to an ex parte hearing on a motion for expert or investigative services.

Id. at 929.

The statute creating the funding mechanisms for expert services, Tenn. Code Ann. § 40-17-204(b), was enacted in 1984. Owens, 908 S.W.2d at 927; 1984 Tenn. Pub. Act, 925, section 1. Owens decided a statutory construction issue and explained that: "It is not necessary that we address the question of whether courts have inherent or constitutional power to order funds for expert and investigative services." Id. at 927. The Owens principle was later extended to non-capital criminal cases on constitutional grounds, State v. Barnett, 909 S.W.2d 423, 426 (Tenn.

1995); State v. Scott, 33 S.W.3d. 746, 753-54 (2000), and to any necessary expert. See Steele v. State, 1999 WL 512053, at *12 (Tenn. Ct. Crim. App. July 21, 1999).

In the Tennessee Court of Criminal Appeals opinion underlying Owens, the lower appellate court held that Tennessee court rules, state jurisdictional statutes and inherent authority permit allow a trial court to appoint an expert in any state post-conviction proceeding upon a showing of a particularized need:

> In addition to the authority found in Rule 13, courts have inherent power to authorize experts and other support services in order to assure that justice is done in a post-conviction case. Courts are required to "administer right and justice according to law." Tenn. Code Ann. § 16-10-101 (1980 Repl.). Inherent in that obligation is the general responsibility of assuring equal justice under the law. Inherent in the responsibility of those trying post-conviction cases is the specific obligation to "vacate and set aside the judgment" upon a finding that "there was ... a denial or infringement of the rights of the prisoner." Tenn. Code Ann. § 40-30-118(a)(1990 Repl.). Recognizing the obligation of courts to mete out justice, Rule 706 of the Tennessee Rules of Evidence allows courts to appoint experts on bench-tried issues. Tenn. R. Evid. 706. Thus, in addition to authorizing services for petitioners who have aptly demonstrated need under Rule 13, the court has the authority to appoint "expert witnesses of its own selection under Rule 706." Both Rule 706 and Rule 13 are vehicles by which a court can meet its obligation to act in ways that assure justice.

Owens v. State, 1994 WL 112997 at *7 (Tenn. Ct. Crim. App. March 25, 1996).

The Tennessee Court of Criminal Appeals Owens holding reiterated an earlier ruling in House v. State of Tennessee, 1994 WL 97546 (Tenn. Crim. App. 1994) involving a post-conviction proceedings.

> Moreover, trial courts, as guardians of constitutionally-based due process, appear to have the inherent power to authorize experts in order to assure that justice may be served in any kind of case. Courts are required to "administer right and justice according to law." Tenn. Code Ann. § 16-10-101 (1980 Repl.). Attendant thereto is the obligation to assure equal justice under the law. Consequently, Rule 706 of the Tennessee Rules of Evidence permits the trial judge to utilize the assistance of experts in the bench trial. This rule would tend to support our conclusion that the trial court has the discretionary authority to appoint an expert when justice so requires.

Id. at *13.

The purpose of this review of state law is to demonstrate that at Petitioner's trial in 1997 and during his state post-conviction proceeding, Petitioner could have made an application for an expert with the state trial court. Upon a showing of a particularized need for an expert, the state trial court could have appointed an expert under Tennessee court rules, state jurisdictional statutes and the trial court's inherent authority. Thus, Tennessee law was not an impediment to Petitioner's development of the evidentiary record on this issue.

As a factual matter, the victim testified on this issue and the jury accepted that proof. On Petitioner's direct appeal, the Tennessee appellate court affirmed that fact. As a matter of law, an expert evaluation or testimony "well after trial" "lacks the same relevance" as would an expert evaluation or testimony at trial. Harries v. Bell, 417 F.3d 631, 636 (6th Cir. 2005). Thus, testimony at a hearing in this action based upon examination in 2007 or sometime thereafter, would not be probative of the victim's status in 1997, when Petitioner was tried and near in time to the event at issue. Petitioner had an evidentiary hearing on his state post-conviction claims and state courts are the forum for deciding this trial issue. This conclusion would apply to any claim in this action.

Accordingly, Petitioner's request for an evidentiary hearing is denied. The parties have 20 days to submit any additional briefs on the merits of the petition.

An appropriate Order is filed herewith.

**ENTERED** this the _8th_ day of February, 2011.

William J. Haynes, Jr.
United States District Judge